# Supreme Court of Florida

_____

No. SC2019-0983

_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JONATHAN STEPHEN SCHWARTZ,**
Respondent.

_____

No. SC2021-0484

_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JONATHAN STEPHEN SCHWARTZ,**
Respondent.

January 18, 2024

PER CURIAM.

We have for review two referee's reports, by different referees,

recommending that Respondent, Jonathan Stephen Schwartz, be

found guilty of professional misconduct and suspended from the practice of law. We have jurisdiction. *See* art. V, § 15, Fla. Const.

As discussed below, we approve the referees' findings of fact and recommendations as to guilt. But we disapprove in part the findings in aggravation and mitigation, and we disapprove each referee's suspension recommendation. Over time, Schwartz has engaged in increasingly inappropriate conduct under the guise of zealous representation. Most notably, a three-year suspension was recently imposed on Schwartz for deceptive conduct in connection with a judicial proceeding. *See Fla. Bar v. Schwartz* (*Schwartz I*), 284 So. 3d 393 (Fla. 2019); *Fla. Bar v. Schwartz* (*Schwartz II*), 334 So. 3d 298, 299 (Fla. 2022). Schwartz's cumulative transgressions are egregious and will not be tolerated. Based on Schwartz's extensive disciplinary history and escalating pattern of misconduct, we disbar him for his misconduct in these two cases.

## I. BACKGROUND

*Case No. SC2019-0983*

On October 16, 2017, Schwartz sent an unsolicited text message to the Bar complainant's cell phone. The message included a photo of the complainant's police report and the text "It's

- 2 -

Jonathan Schwartz. I am a lawyer for battery cases. If you would like to consult regarding the case . . . please call or text." The referee found that the text message violated the advertising rules as follows: (1) it did not include "Advertisement" as the first word in the text, as required by Rule Regulating The Florida Bar (Bar Rule) 4-7.18(b)(2)(B); (2) it did not include any of the required information regarding Schwartz's experience and qualifications, in violation of Bar Rule 4-7.18(b)(2)(C); (3) it did not include the sentence "If you have already obtained a lawyer, please disregard this text," as required at the time by Bar Rule 4-7.18(b)(2)(E)[1]; (4) it did not state how Schwartz obtained the complainant's information, in violation of now designated Bar Rule 4-7.18(b)(2)(G)[2]; and (5) it had not been

---

[1]. Bar Rule 4-7.18(b)(2)(E), as relevant to this proceeding, previously provided as follows: "The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member must be: 'If you have already retained a lawyer for this matter, please disregard this letter.'" Effective August 21, 2023, that requirement is no longer in place. *See In re Amends. to Rules Regul. Fla. Bar – Subchapter 4-7 Information About Legal Servs.*, 366 So. 3d 997, 998 (Fla. 2023).

[2]. At the time of the text advertisement, the rule was designated Bar Rule 4-7.18(b)(2)(H).

filed for review by the Bar as required by Bar Rule 4-7.19(a). The referee rejected Schwartz's argument that the advertising rules, specifically citing Bar Rule 4-7.11 (Application of Rules), do not apply to text messages because the rules do not expressly identify them, and that he was entitled to protection under the "Safe Harbor" provisions of Bar Rule 4-7.16 (Presumptively Valid Content).[3]

Turning to the issue of sanctions, the referee considered Standards for Imposing Lawyer Sanctions (Standards) 8.1(c)(2) (Violation of Court Order or Engaging in Subsequent Same or Similar Misconduct; Public Reprimand) and 9.2(c)(2) (Communications about a Lawyer's Services; Public Reprimand). In addition, the referee found three aggravating factors: (1) prior disciplinary offenses, (2) pattern of misconduct, and (3) substantial experience in the practice of law; and one mitigating factor,

---

3. Bar Rule 4-7.16(a) creates a "safe harbor" for lawyers. According to the Comment under the rule's Editors' Notes, "[a] lawyer desiring a safe harbor from discipline may choose to limit the content of an advertisement to the information listed in this rule and, if the information is true, the advertisement complies with these rules."

character or reputation. The referee also considered as mitigating the following factors, some of which are specific to advertising cases under Standard 9.6 (Mitigation and Aggravation): (1) Schwartz believed that text messages were not subject to the advertising rules and that the text message at issue fell under the Safe Harbor provisions of Bar Rule 4-7.16; (2) Schwartz ceased sending any other text messages seeking employment; (3) Schwartz did not send any other messages to the complainant; (4) Schwartz explained his position with respect to text messages to the complainant's lawyer upon receipt of his email; and (5) Schwartz "is a hard-working attorney, works long hours, and is dedicated in representing his clients." The referee recommended that Schwartz receive a ten-day suspension to run concurrently with the suspension anticipated to be entered in case number SC2017-1391, where the same referee had recommended finding Schwartz guilty of violating Bar Rules in relation to his alterations to photocopies of a police lineup.[4] Neither

---

4. A different referee presided over case number SC2021-0484. The Court had not, however, imposed the three-year suspension in case number SC2017-1391 at the time either referee filed their respective reports. *See Schwartz II*, 334 So. 3d 298.

party sought review of the referee's report in case number SC2019-0983.

*Case No. SC2021-0484*

Schwartz, who had filed a notice of appearance on behalf of the defendant in *State v. Demarris Maloy*, Case No. 132016CF021853A000XX, in Miami-Dade County Circuit Court, met with both client Maloy and Maloy's co-defendant, Gabriel Antwan Johnson, on or about June 12, 2018. Johnson was charged in Case No. 132016CF021853B000XX and was represented by the Miami-Dade County Public Defender's Office at the time. While Johnson appeared at Schwartz's office with Maloy, neither Johnson's lawyer, Assistant Public Defender Kristine Del Sol, nor any other lawyer from the Public Defender's Office, was present. Schwartz did not call Del Sol or make any effort to contact her or her office with respect to Johnson's appearance at his office despite knowing that he was represented.

At that time, Johnson told Schwartz that he wanted to testify on behalf of Schwartz's client. Schwartz prepared a *Byrd*[5] Affidavit,

---

5. *See Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970). A *Byrd* Affidavit is used to obtain a severed trial, based on a

- 6 -

executed by Johnson and notarized by Schwartz's associate, which averred that Johnson wanted to testify on behalf of Maloy, acknowledged his Fifth Amendment right against self-incrimination, and sought to have his case adjudicated before that of his co-defendant to extinguish his right to remain silent.

Schwartz filed the *Byrd* Affidavit with the trial court in his client's case on the same day Johnson came to Schwartz's office. It was never filed in Johnson's case. Schwartz also filed a motion to sever in Maloy's case on or about July 9, 2018, attaching the *Byrd* Affidavit as an exhibit. A hearing was held on Schwartz's motion, in which Johnson's public defender advised the trial court that the affidavit was obtained without her knowledge, that she was unaware that her client had visited Schwartz's office, and that she was only aware of the affidavit due to notification by the assistant state attorney. Under oath, Johnson acknowledged that he was

---

defendant's desire to use his co-defendant's potentially exculpatory testimony, and it must show the following: "(1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the co-defendant will in fact testify if the cases are severed." *Taylor v. State*, 472 So. 2d 814, 815 (Fla. 3d DCA 1985) (citing *Byrd*).

- 7 -

represented by counsel at the time the affidavit was executed and that his lawyer was not present. Schwartz, who proffered that Johnson would testify that the drugs at issue in the criminal case belonged to him and not to Maloy, argued that it was irrelevant for purposes of his motion to sever whether he acquired that information from Johnson. Schwartz further proffered that he had recommended that Johnson call his attorney, though no such call was made.

Following referral to a referee and the portion of the final hearing held on the issue of guilt, the referee recommended that Schwartz be found guilty of violating Bar Rules 4-4.2(a) (Communication with Person Represented by Counsel) and 4-8.4(d) (providing that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice").

Specifically, the referee recommended finding that Schwartz violated Bar Rule 4-4.2(a) because he was aware that Johnson was represented by the Public Defender's Office when he and Maloy met at Schwartz's office, and while Johnson intended on firing his lawyer, Johnson had not done so yet. Schwartz knew this based on

Johnson's statement about being unhappy with the Public Defender's Office, and it was evidenced by the fact that Schwartz recommended that Johnson call his lawyer. The referee further found that the preparation of the *Byrd* Affidavit "in and of itself is the subject of the representation."

The referee also recommended finding that Schwartz violated Bar Rule 4-8.4(d) when he engaged in the impermissible communication with Johnson and had him swear out an affidavit without the benefit of his own lawyer's advice. Schwartz also violated the rule when he immediately filed the affidavit and sought to use it in court proceedings to sever his client's case from his co-defendant's, also without communicating with Johnson's lawyer.

After a separate hearing on the matter of sanctions and without the benefit of this Court's decision on discipline in case number SC2017-1391, the referee recommended a ninety-day suspension. The referee considered the following Standards, all limited to imposition of a suspension, prior to recommending discipline: Standards 4.3(b) (Failure to Avoid Conflicts of Interest), 6.1(b) (False Statements, Fraud, and Misrepresentation), 6.2(b) (Abuse of the Legal Process), 7.1(b) (Deceptive Conduct or

Statements and Unreasonable or Improper Fees), and 8.1(b) (Violation of Court Order or Engaging in Subsequent Same or Similar Misconduct). The referee did not discuss the Standards cited or otherwise explain how a suspension was the presumptive sanction under the Standards.

In addition, the referee found three aggravating factors: (1) prior disciplinary offenses, (2) a pattern of misconduct, and (3) substantial experience in the practice of law. Regarding mitigating factors, the referee found: (1) absence of dishonest or selfish motive, (2) personal or emotional problems, (3) timely good faith effort to make restitution or to rectify the consequences of the misconduct, (4) full and free disclosure to the Bar or cooperative attitude toward the proceedings, (5) character or reputation, (6) interim rehabilitation, (7) imposition of other penalties or sanctions, and (8) remorse.

The Bar seeks review of the recommended discipline, while Schwartz seeks cross-review of the findings of fact and the guilt recommendations.

## II. ANALYSIS

### A. Findings of Fact and Recommendations as to Guilt

The Court's review of the referee's findings of fact as to each rule violation is limited, and if the referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Rush*, 361 So. 3d 796, 801 (Fla. 2023) (citing *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018)). "When reviewing a referee's recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations." *Fla. Bar v. Jacobs*, 370 So. 3d 876, 883 (Fla. 2023) (citing *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018)). Ultimately, the party challenging the referee's findings of fact and conclusions as to guilt has the burden to demonstrate "that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." *Fla. Bar v. Arugu*, 350 So. 3d 1229, 1232 (Fla. 2022) (quoting *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007)).

Neither party sought review of the referee's report in this case. Therefore, the referee's findings of fact are approved along with the referee's recommendation that Schwartz be found guilty of the advertising rule violations. *Cf.* R. Regulating Fla. Bar 3-7.7(c)(1) (providing in pertinent part that "[t]he filing of the notice or cross-notice to seek review is jurisdictional, and the party who fails to timely file notice loses supreme court review as a right").

*Case No. SC2021-0484*

In seeking cross-review in this case, Schwartz argues that the evidence does not support the findings of fact and that the Bar failed to prove a violation of Bar Rules 4-4.2(a) and 4-8.4(d).

Bar Rule 4-4.2(a) prohibits a lawyer in representing his or her client from communicating about the subject of the representation with a person known to be represented by other counsel without consent of that counsel. The Comment to the rule recognizes that "[t]he rule applies even though the represented person initiates or consents to the communication." R. Regulating Fla. Bar 4-4.2, Editors' Notes, Comment.

Here, the record evidence—including Johnson's testimony before the trial court, Schwartz's testimony before the referee, and the testimony of assistant state attorney Daniel Walsh about an email sent to him, assistant public defender Del Sol, and Schwartz a month earlier pertaining to a different motion in the cases—established that Schwartz knew that Johnson was represented by the Public Defender's Office, that Johnson did not know the name of his attorney and was unhappy with his representation, and that Johnson intended to hire, but had not yet hired, private counsel. Despite having initially advised Johnson to contact his lawyer and having told Johnson he could not speak with him about the case since he was represented by counsel, Schwartz met with Johnson regarding the criminal case and had him execute an affidavit that would directly impact the two co-defendants' cases.

Regarding Schwartz's argument that the affidavit was necessary under Florida Rule of Criminal Procedure 3.152(b) (Severance of Defendants) to obtain a severance in his client's case, it should go without saying that that provision does not negate the requirement that it be accomplished in accord with the ethics rules.

Further, Schwartz's reliance upon *In re Decker*, 212 So. 3d 291 (Fla. 2017), is misplaced. In *Decker*, we found that "the evidence is uncontroverted that then-attorney Decker was directly and unequivocally informed by [an individual who was represented by counsel at the time] that he was no longer represented by counsel of record." *Id.* at 306. Here, Schwartz received no such direct and unequivocal notification that Johnson was no longer represented by counsel. In fact, Schwartz knew the opposite—that Johnson was represented by the Public Defender's Office.

Therefore, the referee's findings of fact are supported by competent, substantial evidence and are sufficient to support the recommendation of guilt. We approve the referee's factual findings and we find Schwartz guilty of violating Bar Rule 4-4.2(a).

Next, Bar Rule 4-8.4(d) states that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." Here, the evidence unequivocally demonstrates that Schwartz improperly communicated with a person he knew to be represented by another lawyer, without that lawyer's consent, and pertaining to the subject of the representation. That improper conduct pertained to a criminal

prosecution, and in the course thereof Schwartz was not forthright with the trial court as to the facts underlying his attempt to have his client's case severed from that of his co-defendant.

Therefore, the referee's findings of fact are supported by competent, substantial evidence and are sufficient to support the recommendation of guilt. We approve the referee's findings of fact and conclude that Schwartz violated Bar Rule 4-8.4(d). *See Fla. Bar v. Feinberg*, 760 So. 2d 933, 938 (Fla. 2000) (holding that it was prejudicial to the administration of justice for a state prosecutor to meet with defendant who he knew was represented, even if the defendant encouraged it and the prosecutor believed he had a good motive); *Fla. Bar v. Nunes*, 661 So. 2d 1202, 1203-04 (Fla. 1995) (upholding violations of Bar Rules 4-4.2(a) and 4-8.4(d)).

**B. Discipline**

We now consider whether we should approve the referees' recommended discipline of a ten-day suspension and a ninety-day suspension in these cases. Prior to making a recommendation as to discipline, referees must consider the Standards for Imposing Lawyer Sanctions, which discuss the presumptive sanctions in relation to the misconduct established and are subject to

- 15 -

aggravating and mitigating factors, and this Court's existing case law. *See Fla. Bar v. Strems*, 357 So. 3d 77, 90 (Fla. 2022). The reason for the Court's inquiry, even in an uncontested case, is because the Court's review of a referee's recommended discipline is broader than review of the referee's findings of fact, as it is ultimately this Court's responsibility to determine the appropriate discipline. *See Alters*, 260 So. 3d 72, 83 (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989)); *see also* art. V, § 15, Fla. Const.

In addition, the Court "also considers prior misconduct and cumulative misconduct as relevant factors, and deals more severely with cumulative misconduct than with isolated misconduct." *Fla. Bar v. Wolfe*, 759 So. 2d 639, 645 (Fla. 2000) (citation and internal quotation marks omitted). As a matter of our discretion, we can impose a combined sanction for all cases and determine "the appropriate discipline from the totality of the conduct as though all of the charges had been presented to the Court in one proceeding."[6]

---

6. Currently pending before the referee who presided over case number SC2021-0484 is the complaint filed by the Bar against Schwartz in case number SC2022-1488. At oral argument Schwartz requested that the instant case(s) not be held for

*Strems*, 357 So. 3d at 90 (quoting *Fla. Bar v. Greenspahn,* 396 So. 2d 182, 183 (Fla. 1981)).

Before addressing the recommended discipline in the two instant cases, we must note Schwartz's history of prior misconduct and that he is currently under a three-year suspension. *See Schwartz II*, 334 So. 3d at 299. Most recently, on February 17, 2022, the Court disapproved a recommended ninety-day suspension and instead suspended Schwartz for three years based upon his use of two defense exhibits during a pretrial deposition held in February 2015:

> Schwartz created the exhibits, two black and white photocopies of a police lineup. In each, Schwartz altered the defendant's [his client's] picture. In one exhibit, he replaced the defendant's face with that of an individual whom witnesses other than the robbery victim had identified as the perpetrator. In the other exhibit, Schwartz changed the defendant's hairstyle. However, the altered photocopies used at the deposition retained the victim's identification of the defendant, including both her circle around what had been the defendant's picture and her signature at the bottom of the lineup, as well as a police officer's signature.

resolution of the case before the referee, and the referee in that unperfected case, with the agreement of both parties, sought and obtained extensions to file her report.

*Id.* at 300.  In disapproving a prior referee's report, we explained that the exhibits were "deceptive on their face" and "[b]y their very nature, they conveyed the false message that the substituted photograph was the photograph that had been previously identified by the victim."  *Schwartz I*, 284 So. 3d at 396-97.  Because Schwartz had previously received the longest nonrehabilitative suspension possible, we ultimately determined that Schwartz's misconduct related to the altered exhibits warranted a rehabilitative suspension of three years.  *Schwartz II*, 334 So. 3d at 303.

Prior to the three-year suspension, Schwartz's disciplinary record resulted from consent judgments or otherwise uncontested reports.  In case number SC2011-2143, on May 29, 2012, the Court suspended Schwartz for ninety days for having filed affidavits that included deficient and misrepresented notarizations for a client in a paternity action, as well as having loaned money to his client.  On May 23, 2007, Schwartz received an admonishment for minor misconduct for the dissemination of a direct mail advertisement with numerous violations, including misleading statements.  In case number SC2002-0787, Schwartz received a public reprimand on June 20, 2002, for certain behavior arising from a business dispute.

There, Schwartz made numerous unsubstantiated complaints against his former law partners and made an additional misrepresentation before a judge stating that the former partners were under criminal investigation despite being informed by police that there was no such investigation. And in case number SC1960-90204, Schwartz received a public reprimand on April 10, 1997, for failure to comply with numerous court orders. Lastly, Schwartz received two admonishments for minor misconduct: one, by service of a Grievance Committee Report of Minor Misconduct dated March 29, 1995, in The Florida Bar File No. 1994-71,026(11B), as well as one in 1996 for an advertisement that had not been filed with the advertising section of the Bar and did not contain the word "advertisement" in red ink.

As has become all too clear to this Court, Schwartz's misconduct persistently involves varying degrees of dishonesty and deceit.

Turning to case number SC2019-0983 at issue here, we disagree with the referee's recommended discipline of a ten-day suspension. We note that while the referee cited Schwartz's prior ninety-day suspension imposed in 2012 involving dishonest

- 19 -

conduct and reviewed cases reflecting that the Court views cumulative misconduct more seriously than an isolated instance of misconduct, the recommended ten-day suspension does not apply that proposition or escalate the sanction to be imposed. Further, prior case law would have supported a rehabilitative suspension had we reviewed this case in isolation. *See, e.g.*, *Fla. Bar v. Dopazo*, 232 So. 3d 258, 263 (Fla. 2017) (imposing a one-year suspension for unethical violations of the solicitation rule); *Fla. Bar v. Letwin*, 70 So. 3d 578, 584-85 (Fla. 2011) (holding that sending letters containing misleading statements and soliciting employment to over 900 prospective clients violated the rule pertaining to written communications and warranted a one-year suspension); *Wolfe*, 759 So. 2d at 640, 646 (suspending attorney for one year for in-person solicitation of clients in areas affected by tornadoes in violation of advertising rules).

In addition to not assigning appropriate weight to the aggravating factors of prior disciplinary offenses, pattern of misconduct, and substantial experience in the practice of law, the referee gave undue consideration as mitigating factors to Schwartz's subjective, uninformed belief that the advertising rules did not

apply to text messages, and that he has a "public defender type of practice" and is "dedicated in representing his clients." We find unreasonable the notion that "written communications" under the rules only applies to emails since it is specifically referenced. Rather, Standard 9.1(c) defines "direct mail communication" to include written or electronic communications as described in the Bar Rules, and Bar Rule 4-7.11(a) expressly provides that subchapter 4-7 (Information About Legal Services), which governs direct contact with prospective clients (Bar Rule 4-7.18), "applies to all forms of communication in any print or electronic forum" and is not limited to the examples listed. And as we intimated in Schwartz's defense exhibits' disciplinary case, the requirement of providing zealous representation is not a sword to wield as an excuse to otherwise engage in misconduct. *See Schwartz II*, 334 So. 3d at 304.

Turning now to case number SC2021-0484, we first disapprove of the portion of the referee's report finding that the Standards presumptively calling for suspension apply. Instead, we find that disbarment is the presumptive sanction under the following Standards.

Standard 5.1(a) provides that "[d]isbarment is appropriate when a lawyer . . . engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Here, while Schwartz knew that Johnson was represented by the Public Defender's Office, he filed the *Byrd* Affidavit in his client's case only and did not serve that office or file a copy in Johnson's case.

Standard 6.1(a) provides that "[d]isbarment is appropriate when a lawyer . . . improperly withholds material information and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." Here, Schwartz withheld from the Public Defender's Office material information that could have exposed Johnson to additional criminal charges, and, having proffered that Johnson would testify that the drugs at issue in Maloy's criminal case belonged to Johnson and not Maloy, argued that it was irrelevant for purposes of his motion to sever whether he acquired that information from Johnson.

Standard 7.1(a) provides that "[d]isbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public, or the legal system." Here, Schwartz owed a duty to Johnson and his lawyer to not communicate with Johnson because Schwartz knew Johnson was represented by counsel, irrespective of Johnson's dissatisfaction with that representation. Such conduct not only could have benefitted Maloy to the detriment of Johnson, but also could have benefitted Schwartz himself, who has sought to build a reputation as a so-called private public defender upon his own misguided interpretation of the ethics rules.

We also disapprove of the portion of the referee's report regarding mitigating factors. "Like other factual findings, a referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Strems*, 357 So. 3d at 91 (quoting *Germain*, 957 So. 2d at 621).

Here, the evidence only supports finding Standards 3.3(b)(7) (character or reputation) and 3.3(b)(10) (interim rehabilitation). Many friends, relatives of clients, and other professionals testified in support of Schwartz about his character, while Schwartz testified concerning his therapy with Florida Lawyer's Assistance, Inc., and his efforts to change the way he practices law.

But the record evidence contradicts the referee's findings as to the other mitigating factors.

Standard 3.3(b)(2) (absence of a dishonest or selfish motive) is not applicable here because, while Schwartz's motive was not financial, the type of motive usually contemplated under this factor, his overzealous representation was intended to benefit his professional reputation of a "private public defender office." Standard 3.3(b)(3) (personal or emotional problems) does not apply because at issue is a life-long personality characteristic as opposed to an acute emotional impairment. With respect to Standards 3.3(b)(4) (timely good faith effort to make restitution or to rectify the consequences of the misconduct) and 3.3(b)(5) (full and free disclosure to the bar or cooperative attitude toward the proceedings), no evidence is cited in support of those mitigating

factors. Regarding Standard 3.3(b)(11) (imposition of other penalties or sanctions), Schwartz was not otherwise disciplined and the delay in adjudicating this case is due to other pending Bar disciplinary cases brought against Schwartz. Finally, Schwartz's expression of acceptance of responsibility for his misconduct is not the same as being remorseful under Standard 3.3(b)(12). To the contrary, the record reflects that Schwartz blamed the Bar for his troubles, testifying at the sanction hearing that, in the context of seeking help from other lawyers, he had stated that "[t]he Bar's doing everything they can to take away my license." *See Fla. Bar v. Horton*, 332 So. 3d 943, 949 (Fla. 2019) (finding of remorse was clearly erroneous and evidence was insufficient, where lawyer accused the Bar of prosecuting him like a "trophy being hunted" and that the proceedings were like "facing a firing squad for a traffic violation").

The Court also considers existing case law in determining the appropriate sanction to impose. Here, the referee distinguished as factually dissimilar cases cited by the Bar in support of imposing disbarment, while citing a ninety-day suspension case, *Florida Bar v. Committe*, 916 So. 2d 741 (Fla. 2005), without explanation. The

- 25 -

referee appears to have rested her recommended sanction upon Schwartz's professed intent "to provide full and effective assistance of counsel in a criminal case" and erroneously concluded that his misconduct "did not do any harm to any other person or the system of justice." As we have previously stated, a lawyer's asserted motive or the purpose in acting is not determinative of whether a rule was violated and is not a factor in determining the appropriate sanction to impose. *See Schwartz I*, 284 So. 3d at 396. In addition, the referee here neither cited nor applied our recent case law imposing more severe sanctions for lawyer misconduct, *see, e.g., Fla. Bar v. Altman*, 294 So. 3d 844, 847 (Fla. 2020) (citing *Fla. Bar v. Parrish*, 241 So. 3d 66, 80 (Fla. 2018), or that cumulative misconduct warrants more severe discipline, *Fla. Bar v. Bosecker*, 259 So. 3d 689, 699 (Fla. 2018).

Therefore, we disapprove the referee's recommended discipline in both cases. Instead, we conclude that the totality of Schwartz's conduct in the two cases taken together, and when considering Schwartz's disciplinary history, warrants disbarment. *See Fla. Bar v. Dupee*, 160 So. 3d 838, 853 (Fla. 2015) ("The purposes of attorney discipline are: (1) to protect the public from unethical

conduct without undue harshness towards the attorney; (2) to punish misconduct while encouraging reformation and rehabilitation; and (3) to deter other lawyers from engaging in similar misconduct.").

### III.  CONCLUSION

Accordingly, Schwartz is hereby disbarred from the practice of law in the State of Florida, effective immediately because he is currently under suspension.  Schwartz shall fully comply with Rule Regulating The Florida Bar 3-5.1(h) and Rule Regulating The Florida Bar 3-6.1, if applicable.  Prior to seeking readmission, Schwartz is further directed to comply with all other terms and conditions of the report in case number SC2021-0484.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Jonathan Stephen Schwartz in the amount of $9,795.75,[7] for which sum let execution issue.

It is so ordered.

---

7.  The Bar's costs include $7,507.50 in case number SC2021-0484 and $2,288.25 in case number SC2019-0983.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida, and Rita Florez, Bar Counsel, The Florida Bar, Miami, Florida; and Chris Altenbernd of Banker, Lopez Gassler P.A., Tampa, Florida,

for Complainant

Barry M. Wax of Law Offices of Barry M. Wax, Miami, Florida; Benedict P. Kuehne of Kuehne Davis Law, P.A., Miami, Florida; and Richard Baron of Baron, Breslin & Sarmiento, Miami, Florida,
for Respondent